**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| TONNETTE DUNAGAN, individually, and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>700CREDIT, LLC, a Delaware limited liability company; and DOES 1 through 10, inclusive,<br><br>*Defendants*. | Case No. ____________________<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Tonnette Dunagan ("Plaintiff"), individually, and on behalf of all others similarly situated, brings this Class Action Complaint against Defendants 700Credit, LLC ("700Credit" or "Defendant") and Does 1 through 10, inclusive (together, "Defendants"), based upon her personal knowledge, and as to all other matters upon information and belief, based upon, *inter alia*, the investigations of their attorneys.

## NATURE OF THE ACTION

1. On or around October 25, 2025, 700Credit experienced a data breach whereby its internal systems were infiltrated by cybercriminals (the "Data Breach"). As a result of that Data Breach, unauthorized third-party hackers acquired the personal identifying information (PII) of approximately 5,836,521 individuals that was stored on its servers. This information included, *inter alia*, their names, dates of birth, and Social Security numbers.

2. 700Credit is the largest provider of credit reports, soft pull credit data, identity verification, fraud detection and compliance solutions in the United States for automotive, RV,

powersports and marine dealerships. As a sophisticated entity that regularly handles consumers' sensitive PII in the ordinary course of its business, 700Credit was well aware of the need to adopt robust data security measures to ensure that PII was adequately protected from unauthorized use and disclosure.

3. Indeed, under statute and regulation, 700Credit had a duty to implement reasonable and adequate industry-standard data security policies and safeguards to protect the PII entrusted to it. However, 700Credit failed to implement such security policies and safeguards and allowed third-party hackers to exfiltrate that PII.

4. Plaintiff and Class Members have suffered injuries and damages. As a result of Defendants' wrongful actions and inactions, Plaintiff and Class Members have suffered injuries and damages. Plaintiff's and Class Members' sensitive PII have been compromised. Plaintiff and Class Members have had their privacy rights violated and are now exposed to a heightened risk of identity theft and credit and medical fraud for the remainder of their lifetimes. Plaintiff and Class Members must now spend time and money on prophylactic measures, such as increased monitoring of their personal and financial accounts, and the purchase of credit monitoring services, to protect themselves from future loss. Plaintiff and Class Members have also lost the value of their PII.

5. As a result of Defendants' wrongful actions and inactions, Plaintiff and Class Members have had their PII compromised and stolen by nefarious third-party hackers, have had their privacy rights violated, have been exposed an increased risk of fraud and identity theft, and have otherwise suffered damages. Plaintiff and Class Members bring this action to seek redress against Defendants.

**PARTIES**

6. Plaintiff is a resident and citizen of the State of Michigan. On or around December 22, 2025, Plaintiff received a Data Breach Notice from Defendant informing her that her PII—including her name, date of birth and Social Security number—had been impacted by the Data Breach. Since the Data Breach occurred on October 25, 2025, Plaintiff has received a substantial uptick in spam calls and fraud attempts on her personal and financial accounts, which has caused her significant distress and has required substantial time and effort on her part to address.

7. Defendant 700Credit, LLC is a Delaware limited liability company with its principal place of business located at 26555 Northwestern Highway, Suite 301, Southfield MI 48033. Defendant's registered agent for service of process is CSC-Lawyers Incorporating Service (Company) who can be served at 3410 Belle Chase Way Ste 600, Lansing, MI 48911.

8. The true names and/or capacities, whether individual, corporate, partnership, associate or otherwise, of the Defendants herein designated as Does 1 through 10 are unknown to Plaintiff at this time, and Plaintiff, therefore, sues said Defendants by fictitious names. Plaintiff alleges that each named Defendant herein designated as a Doe party is negligently, willfully or otherwise legally responsible for the events and happenings herein referred to and proximately caused damage to Plaintiff and Class Members, as herein alleged. Plaintiff will seek leave of Court to amend this Complaint to insert the true names and capacities of such Defendants when they have been ascertained and will further seek leave to join said Defendants in these proceedings.

9. Doe parties were agents, servants, employees, partners, distributors, joint ventures, business associates of each other, and/or otherwise entrusted Defendants with Plaintiff's and Class Members' PII and that, in doing the acts herein alleged, were acting within the course and scope of said agency, employment, partnership joint venture or business associate relationship. Each and every

aforesaid Defendant was acting as a principal and was negligent or grossly negligent in the selection, hiring, and training of each and every other Defendant, ratified the conduct of every other Defendant as an agent, servant, employee, joint venture, or business associate, or otherwise negligently entrusted Plaintiff's and Class Members' PII to one another.

10. Each of the Defendants was and is an agent of the other Defendants. Each Defendant, in acting or omitting to act as alleged in this Complaint, was acting in the course and scope of its actual or apparent authority pursuant to such agencies, and/or the alleged acts or omissions of each Defendant as an agent were subsequently ratified and adopted by each agent as a principal. Each Defendant, in acting or omitting to act as alleged in this Complaint, was acting through its agents, and is liable based on the acts and omissions of its agents.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over the claims asserted herein pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), as the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and there are numerous Class Members who are citizens of states other than Defendant's state of citizenship.[1]

12. This Court also has personal jurisdiction over the parties because Defendant resides in and routinely conducts business in this State and has sufficient minimum contacts in this State to have intentionally availed themselves to this jurisdiction.

13. Venue is proper in this District because, among other things: (a) Plaintiff resides in this District, (b) Defendant resides in and conducts substantial business in this District; (c) Defendant

[1] For example, there exist at least 19,225 class members who are citizens of the State of Maine. *https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/d546001c-f4d5-4c31-8b0e-c28e80d3b35f.html* (last visited Dec. 31, 2025).

directed its services at residents in this District, and (d) many of the acts and omissions that gave rise to this action took place in this District.

## FACTUAL BACKGROUND

### A. The Data Breach

14. Defendant is the largest nationwide provide of credit reports, soft pull credit data, identity verification, fraud detection, and compliance solutions in the United States for automotive, RV, powersports and marine dealerships. In the ordinary course of its business, Defendant is entrusted with the PII of millions of consumers across the country, which it knows it has a duty and obligation to safeguard against unauthorized use and access.

15. Specifically, Defendant received consumer PII through its 200 integration partners through APIs, a type of software used to exchange data between servers. Defendant was required by industry standard, statute, and obligation to ensure that its API connections were secured. It did not do so.

16. On October 25, 2025, unauthorized third party hackers launched a sustained velocity attack on Defendant through an exposed API. This attack lasted two weeks, during which those hackers were able to access, exfiltrate and acquire the PII of over 5.8 million individuals.

### B. Defendants' Unreasonable and Inadequate Data Security

17. Defendants' failure to implement reasonable and adequate data security safeguards—such as properly API inspections—caused the Data Breach. Defendant failed to implement such data security features despite the well-known risks of data breach within its industry and given the sensitive nature of the PII it stored.

18. Plaintiff and Class Members had reasonable expectations and a mutual understanding that reasonable and adequate cybersecurity safeguards would be implemented by Defendant and its

business partners to protect their PII from unauthorized disclosure. What Plaintiff and Class Members did not expect was that Defendant would cause their sensitive PII to be obtained by unauthorized third parties by leaving itself vulnerable to a cyberattack.

**C. Defendant's Obligation to Protect PII Under Federal Law**

19. The Federal Trade Commission Act, 15 U.S.C. §45 prohibits businesses such as Defendant from engaging in "unfair or deceptive acts or practices affecting commerce." The Federal Trade Commission ("FTC") has found that a company's failure to maintain reasonable and appropriate data security for the consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 243 (3rd Cir. 2015).

20. Defendant has failed to comply with the FTC by failing to implement and maintain reasonable security procedures to protect Plaintiff and Class Members' PII.

**D. Defendants' Failure to Comply with Industry Data Security Standards and Regulations**

21. Experts in the field of data security are in consensus that financial services providers such as Defendant are specifically targeted by hackers due to the value of the PII that they collect and maintain as a part of their ordinary course of business. As such, experts have identified several best practices that healthcare providers such as Defendant should implement and follow in order to best protect themselves from unauthorized access.

22. Such best practices are outlined in the National Institute of Standards and Technology's (NIST) "Security and Privacy Controls for Information Systems and Organizations" publication. These best practices include, *inter alia*, maintaining a plan of action for preventing and addressing data breaches, training and educating employees on data security, implementing strong

password requirements, implementing multi-layer security such as two-factor authentication, installation and maintenance of firewalls, anti-virus and anti-malware software, implementing data encryption, monitoring and protection of web browsers and email management systems, and limiting the number of employees with access privileges to patient PII. *See, e.g*, NIST SP 800-53, Rev. 5 AC-1, AC-2, AC-3, AC-4, AC-5, AC-6, AT-1, AT-3, CA-1, CA-2, CA-3, CA-7, IA-1, IA-2, IA-3, PL-1, PL-2, PM-1, PT-1, PT-2, PT-3.

23. The FTC has also promulgated numerous guides for business which highlight the importance of implementing reasonable data security practices. In 2016, the FTC updated its publication, "Protecting Personal Information: A Guide for Business,"[2] which establishes guidelines for fundamental data security principles and practices for business. Among other things, the guidelines dictate businesses should protect any personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems. The guidelines also recommend that businesses implement an intrusion detection system to expose breaches as soon as they occur; monitor all incoming traffic for activity indicating someone is attempting to infiltrate or hack the system; monitor instances when large amounts of data are transmitted to or from the system; and have a response plan ready in the event of a breach.[3] Additionally, the FTC recommends that companies limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious

[2] Federal Trade Commission, *Protecting Personal Information: A Guide for Business* (Oct. 2016), *https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business* (last visited Dec. 31, 2025).

[3] *Id.*

activity on the network; and verify that third-party service providers have implemented reasonable security measures.[4]

### E. Applicable Standards of Care

24. In addition to their obligations under federal law and regulation, Defendants owed a duty to Plaintiff and the Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendants owed a duty to Plaintiff and the Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that their computer system and networks, and the personnel responsible for them, adequately protected the PII of Plaintiff and Class Members.

25. Defendants owed a duty to Plaintiff and the Class Members to design, maintain, and test their computer system to ensure that the PII in Defendants' possession was adequately secured and protected.

26. Defendants owed a duty to Plaintiff and the Class Members to create and implement reasonable data security practices and procedures to protect the PII in their possession, including adequately training their employees and others who accessed the PII in their possession, including adequately training their employees and others who accessed PII in their computer systems on how to adequately protect PII.

27. Defendants owed a duty of care to Plaintiff and Class Members to implement processes that would detect a breach of their data security systems in a timely manner.

---

[4] Federal Trade Commission, *Start With Security: A Guide for Business* (Jun. 2015) *https://www.ftc.gov/business-guidance/resources/start-security-guide-business* (last visited Dec. 31, 2025).

28. Defendants owed a duty to Plaintiff and the Class Members to act upon data security warnings and alerts in a timely fashion.

29. Defendants owed a duty to Plaintiff and Class Members to disclose if their computer systems and data security practices were inadequate to safeguard individuals' PII from theft because such an inadequacy would be a material fact in the decision to provide or entrust their PII to Defendants.

30. Defendants owed a duty to Plaintiff and the Class Members to disclose in a timely and accurate manner when the data breach occurred.

31. Defendants owed a duty of care to Plaintiff and the Class Members because they were foreseeable and probable victims of any inadequate data security practices. Defendants received PII from Plaintiff and Class Members with the understanding that Plaintiff and Class Members expected their PII to be protected from disclosure. Defendants knew that a breach of its data systems would cause Plaintiff and Class Members to incur damages.

**F. Stolen Information is Valuable to Hackers and Thieves**

32. It is well known, and the subject of many media reports, that PII is highly coveted and a frequent target of hackers. Especially in the technology industry, the issue of data security and threats thereto is well known. Despite well-publicized litigation and frequent public announcements of data breaches, Defendants opted to maintain an insufficient and inadequate system to protect the PII of Plaintiff and Class Members.

33. Plaintiff and Class Members value their PII, as in today's electronic-centric world, their PII is required for numerous activities, such as new registrations to websites, or opening a new bank account, as well as signing up for special deals.

34. Legitimate organizations and criminal underground alike recognize the value of PII. That is why they aggressively seek and pay for it.

35. PII is highly valuable to hackers. Identity thieves use stolen PII for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud. PII that is stolen from the point of sale are known as "dumps."[5]

36. Once someone buys PII, it is then used to gain access to different areas of the victim's digital life, including bank accounts, social media, and credit card details. During that process, other sensitive data may be harvested from the victim's accounts, as well as from those belonging to family, friends, and colleagues.

37. In addition to PII, a hacked email account can be very valuable to cyber criminals. Since most online accounts require an email address not only as a username, but also as a way to verify accounts and reset passwords, a hacked email account could open up a number of other accounts to an attacker.[6]

---

[5] *See All About Fraud: How Crooks Get the CVV*, Krebs on Security (April 26, 2016), *https://krebsonsecurity.com/2016/04/all-about-fraud-how-crooks-get-the-cvv/* (last visited Dec. 31, 2025).

[6] *Identity Theft and the Value of Your Personal Data*, Trend Micro (Apr. 30, 2015), *https://www.trendmicro.com/vinfo/us/security/news/online-privacy/identity-theft-and-the-value-of-your-personal-data* (last visited Dec. 31, 2025).

38. As shown below, a hacked email account can be used to link to many other sources of information for an identity thief, including any purchase or account information found in the hacked email account.[7]




39. Hacked information can also enable thieves to obtain other personal information through "phishing." According to the Report on Phishing available on the United States, Department of Justice's website: "AT&T, a large telecommunications company, had its sales system hacked into, resulting in stolen order information including full names and home addresses, order numbers and credit card numbers. The hackers then sent each customer a highly personalized e-mail indicating that there had been a problem processing their order and re-directing them to a spoofed website where they were prompted to enter further information, including birthdates and Social Security numbers."[8]

[7] Brian Krebs, *The Value of a Hacked Email Account*, Krebs on Security (June 13, 2013), *https://krebsonsecurity.com/2013/06/the-value-of-a-hacked-email-account/* (last visited Dec. 31, 2025).

[8] *Report on Phishing* (Oct. 2006), https://www.justice.gov/archive/opa/docs/report_on_phishing.pdf

**G. The Data Breach Has and Will Result in Additional Identity Theft and Identity Fraud**

40. Defendants failed to implement and maintain reasonable security procedures and practices appropriate to protect the PII of Plaintiff and the Class Members. The ramification of Defendants' failure to keep Plaintiff and the Class Members' data secure is severe.

41. It is incorrect to assume that reimbursing a consumer for a financial loss due to fraud makes that individual whole again. On the contrary, after conducting a study, the Department of Justice's Bureau of Justice Statistics ("BJS") found that "among victims who had personal information used for fraudulent purposes, about a third (32%) spent a month or more resolving problems."[9] In fact, the BJS reported, "resolving the problems caused by identity theft [could] take more than a year for some victims." *Id.*

**H. Annual Monetary Losses from Identity Theft are in the Billions of Dollars**

42. Javelin Strategy and Research reports that losses from identity theft reached $21 billion in 2013. There may be a time lag between when harm occurs and when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

*See* GAO, Report to Congressional Requesters (June 2007), http://www.gao.gov/new.items/d07737.pdf. (last accessed January 16, 2022.)

---

[9] *See Victims of Identity Theft*, U.S. Department of Justice (September 2015, revised November 13, 2017), https://bjs.ojp.gov/content/pub/pdf/vit14.pdf

43. This is particularly the case with HIPAA data breaches such as Defendants', as the information implicated, such as social security numbers of medical history, cannot be changed. Once such information is breached, malicious actors can continue misusing the stolen information for years to come. Indeed, medical identity theft are one of the most common, most expensive, and most difficult-to-prevent forms of identity theft.[10] Victims of medical identity theft "often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[11]

44. Indeed, a study by Experian found that the average total cost of medical identity theft is "nearly $13,500" per incident, and that many victims were forced to pay out-of-pocket costs for fraudulent medical care.[12] Victims of healthcare data breaches often find themselves "being denied care, coverage or reimbursement by their medical insurers, having their policies canceled or having to pay to reinstate their insurance, along with suffering damage to their credit ratings and scores."[13]

45. Plaintiff and the Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any financial or identity fraud they suffer.

**I. Plaintiff and Class Members Suffered Damages**

46. The exposure of Plaintiff and Class Members' PII to unauthorized third-party hackers was a direct and proximate result of Defendants' failure to properly safeguard and protect Plaintiff

---

[10] Michael Ollove, *The Rise of Medical Identity Theft in Healthcare* (Feb. 7, 2014), *https://khn.org/news/rise-of-indentity-theft/* (last visited Dec. 31, 2025).

[11] *Id.*

[12] *Healthcare Data Breach: What to Know About them and What to Do After One*, EXPERIAN (June 14, 2018), https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-after-one/ (last visited Dec. 31, 2025).

[13] *Id.*

and Class Members' PII from unauthorized access, use, and disclosure, as required by and state and federal law. Upon information and belief, the Data Breach was also a result of Defendant's failure to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiff and Class Members' PII in order to protect against reasonably foreseeable threats to the security or integrity of such information, also required by their contracts and federal statute and regulation.

47. Plaintiff and Class Members' PII is private and sensitive in nature and was inadequately protected by Defendant. Defendant did not obtain Plaintiff and Class Members' consent to disclose their PII, except to certain persons not relevant to this action, as required by applicable law and industry standards.

48. As a direct and proximate result of Defendants' wrongful actions and inaction and the resulting data breach, Plaintiff and Class Members have been placed at an imminent, immediate, and continuing risk of harm from identity theft and identity fraud, requiring them to take the time and effort to mitigate the actual and potential impact of the subject data breach on their lives by, among other things, paying for credit and identity monitoring services, spending time on credit and identity monitoring, placing "freezes" and "alerts" with credit reporting agencies, contacting their personal, financial and healthcare institutions, closing or modifying personal, financial or healthcare accounts, and closely reviewing and monitoring their credit reports, financial accounts and healthcare accounts for unauthorized activity.

49. Plaintiff and Class Members also lost the value of their PII. PII is a valuable commodity, as evidenced by numerous companies which purchase PII from consumers, such as UBDI, which allows its users to link applications like Spotify, Twitter, or Apple Health and opt-in to

paid opportunities to earn income, and Brave, which uses a similar business model, and by market-based pricing data involving the sale of stolen PII across multiple different illicit websites.

50. Top10VPN, a secure network provider, has compiled pricing information for stolen PII, including $160.15 for online banking details, $35.00 for credit reports, and $62.61 for passports. Standalone Yahoo email accounts have been listed for as little as $0.41, while banking logins are in the range of $500, and verified Paypal accounts with high balances are listed at as much as $2,000.

51. In addition, Privacy Affairs, a cyber security research firm, has listed the following prices for stolen PII:

| | |
|---|---|
| U.S. driving license, high quality: | $550 |
| Auto insurance card: | $70 |
| AAA emergency road service membership card: | $70 |
| Wells Fargo bank statement: | $25 |
| Wells Fargo bank statement with transactions: | $80 |
| Rutgers State University student ID: | $70 |

52. Defendants' wrongful actions and inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiff and Class Members' PII, causing them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

a. The improper disclosure and theft of their PII;

b. The imminent and impending injury flowing from potential fraud and identity theft posed by their PII being exposed to and misused by unauthorized third-party hackers;

c. The untimely and inadequate notification of the data breach;

d. Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the data breach; and

e. Ascertainable losses in the form of deprivation of the value of their PII, for which there is a well-established national and international market.

## CLASS ACTION ALLEGATIONS

53. Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23(b)(2), (b)(3) and (c)(4).

54. Plaintiff seeks to certify following Class, as defined below:

> All persons in the United States whose PII was compromised by the data breach discovered by Defendant 700Credit, LLC on or around October 25, 2025.

55. Excluded from the Class are Defendants, including any entity in which Defendants have a controlling interest, is a parent or subsidiary, or which is controlled by Defendants, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendanst. Also excluded are the judge and the court personnel in this case and any members of their immediate families. Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

56. *Numerosity*. The Members of the Classes are so numerous that joinder of all of them is impracticable. At this present moment, the Class is comprised of at least 5.8 million individuals. The disposition of the claims of Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Defendants' possession, custody, or control, such as reservation receipts and confirmations.

57. *Commonality*. Fed. R. Civ. P. 23(a)(2) and (b)(3): There are questions of law and fact common to the Classes, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a. Whether Defendants took reasonable steps and measures to safeguard Plaintiff's and Class Members' PII;

b. Whether Defendants violated common and statutory regulations and requirements by failing to implement reasonable procedures and practices;

c. Which security procedures and which data-breach notification procedure should Defendants be required to implement as part of any injunctive relief ordered by the Court;

d. Whether Defendants knew or should have known about the data breach prior to the disclosure;

e. Whether Defendants' acts or omissions described herein give rise to a claim of negligence;

f. Whether Defendants had a duty to promptly notify Plaintiff and Class Members that their PII was, or potentially could be, compromised;

g. What security measures, if any, must be implemented by Defendants to comply with its duties under state and federal law;

h. The nature of the relief, including equitable relief, to which Plaintiff and the Class Members are entitled; and

i. Whether Plaintiff and Class Members are entitled to damages, civil penalties, and/or injunctive relief.

58. *Typicality*. Fed. R. Civ. P. 23(a)(3): Plaintiff's claims are typical of those of other Class Members because Plaintiff's PII, like that of every other Class Member, was collected by Defendants during their ordinary course of business and then subsequently misused and/or disclosed by Defendants.

59. *Adequacy of Representation*. Fed. R. Civ. P. 23(a)(4): Plaintiff will fairly and adequately represent and protect the interests of Class Members. Plaintiff has retained competent counsel experienced in litigation of class actions, including consumer and data breach class actions, and Plaintiff intends to prosecute this action vigorously. Plaintiff's claims are typical of the claims of other Class Members and Plaintiff has the same non-conflicting interests as the other Class Members. Therefore, the interests of the Class will be fairly and adequately represented by Plaintiff and their counsel.

60. *Superiority of Class Action*. Fed. R. Civ. P. 23(b)(3): A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Class is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action.

61. *Superiority of Class Action*. Fed. R. Civ. P. 23(b)(3): A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Class is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action. Defendants have acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

62. Damages for any individual class member are likely insufficient to justify the cost of individual litigation so that, in the absence of class treatment, Defendants' violations of law inflicting substantial damages in the aggregate would go un-remedied.

63. Class certification is also appropriate under Rule 23(a) and (b)(2), because Defendants have acted or refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Negligence

64. Plaintiff repeats and incorporates herein by reference each and every allegation contained in paragraphs 1 through 63, inclusive, of this Complaint as if set forth fully herein.

65. Defendants collect and stores the sensitive PII of millions of consumers nationwide as a part of its regular business activities, and for its own pecuniary gain. By collecting and maintaining sensitive PII, Defendants have a duty or care to use reasonable means to secure and safeguard that PII to prevent unauthorized disclosure.

66. Defendants owed Plaintiff and the Class Members a duty of care in the handling of its patient's PII. This duty included, but was not limited to, keeping that PII secure and preventing disclosure of the PII to any unauthorized third parties. This duty of care existed independently of Defendants' contractual duties to Plaintiff and the Class Members. Under the FTC Guidelines, and other sources of industry-wide cybersecurity standards, Defendants are obligated to incorporate adequate measures to safeguard and protect PII that is entrusted to them in their ordinary course of business and transactions with customers.

67. Pursuant to the Federal Trade Commission Act (15 U.S.C. §45), Defendants had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff and Class Members' PII. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer information, treating the businesses' failure to employ

reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45. Orders from these actions further clarify the measures businesses are required to undertake in order to satisfy their data security obligations. [14]

68. Additional industry guidelines which provide a standard of care can be found in NIST's *Framework for Improving Critical Infrastructure Cybersecurity.*[15] NIST's Framework identifies seven steps for establishing or improving a cybersecurity program (section 3. 2). Those steps are:

> *Step 1: Prioritize and Scope*. The organization identifies its business/mission objectives and high-level organizational priorities. With this information, the organization makes strategic decisions regarding cybersecurity implementations and determines the scope of systems and assets that support the selected business line or process. The Framework can be adapted to support the different business lines or processes within an organization, which may have different business needs and associated risk tolerance. Risk tolerances may be reflected in a target Implementation Tier.
>
> *Step 2: Orient*. Once the scope of the cybersecurity program has been determined for the business line or process, the organization identifies related systems and assets, regulatory requirements, and overall risk approach. The organization then consults sources to identify threats and vulnerabilities applicable to those systems and assets.
>
> *Step 3: Create a Current Profile*. The organization develops a Current Profile by indicating which Category and Subcategory outcomes from the Framework Core are currently being achieved. If an outcome is partially achieved, noting this fact will help support subsequent steps by providing baseline information.
>
> *Step 4: Conduct a Risk Assessment*. This assessment could be guided by the organization's overall risk management process or previous risk assessment activities. The organization analyzes the operational environment in order to discern the likelihood of a cybersecurity event and the impact that the event could have on the organization. It is important that organizations identify emerging risks and use cyber threat information from internal and external sources to gain a better understanding of the likelihood and impact of cybersecurity events.

[14] Federal Trade Commission, *Privacy and Security Enforcement: Press Releases*, *https://www.ftc.gov/news-events/topics/protecting-consumer-privacy-security/privacy-security-enforcement* (last visited Dec. 31, 2025).

[15] "Framework for Improving Critical Infrastructure Cybersecurity," National Institute for Standards and Technology, https://nvlpubs.nist.gov/nistpubs/cswp/nist.cswp.04162018.pdf

> *Step 5: Create a Target Profile*. The organization creates a Target Profile that focuses on the assessment of the Framework Categories and Subcategories describing the organization's desired cybersecurity outcomes. Organizations also may develop their own additional Categories and Subcategories to account for unique organizational risks. The organization may also consider influences and requirements of external stakeholders such as sector entities, customers, and business partners when creating a Target Profile. The Target Profile should appropriately reflect criteria within the target Implementation Tier.
>
> *Step 6: Determine, Analyze, and Prioritize Gaps*. The organization compares the Current Profile and the Target Profile to determine gaps. Next, it creates a prioritized action plan to address gaps – reflecting mission drivers, costs and benefits, and risks – to achieve the outcomes in the Target Profile. The organization then determines resources, including funding and workforce, necessary to address the gaps. Using Profiles in this manner encourages the organization to make informed decisions about cybersecurity activities, supports risk management, and enables the organization to perform cost-effective, targeted improvements.
>
> *Step 7: Implement Action Plan*. The organization determines which actions to take to address the gaps, if any, identified in the previous step and then adjusts its current cybersecurity practices in order to achieve the Target Profile. For further guidance, the Framework identifies example Informative References regarding the Categories and Subcategories, but organizations should determine which standards, guidelines, and practices, including those that are sector specific, work best for their needs.

69. In addition to their obligations under federal regulations and industry standards, Defendants owed a duty to Plaintiff and the Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Plaintiff and the Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that their computer systems and networks, and the personnel responsible for them, adequately protected the PII of Plaintiff and the Class Members.

70. Defendants owed a duty to Plaintiff and the Class Members to design, maintain, and test their internal data systems to ensure that the PII in Defendants' possession was adequately secured and protected.

71. Defendants owed a duty to Plaintiff and the Class Members to create and implement reasonable data security practices and procedures to protect the PII in its custodianship, including adequately training its employees and others who accessed PII within its computer systems on how to adequately protect PII.

72. Defendants owed a duty to Plaintiff and the Class Members to implement processes or safeguards that would detect a breach of their data security systems in a timely manner.

73. Defendants owed a duty to Plaintiff and the Class Members to act upon data security warnings and alerts in a timely fashion.

74. Defendants owed a duty to Plaintiff and the Class Members to timely disclose if its computer systems and data security practices were inadequate to safeguard individuals' PII from theft because such an inadequacy would be a material consideration in Plaintiff and Class Members' decisions to entrust their PHI/PII to Defendants.

75. Defendants owed a duty to Plaintiff and the Class Members to disclose in a timely and accurate manner when data breaches occur.

76. Defendants owed a duty of care to Plaintiff and the Class Members because they were foreseeable and probable victims of any inadequate data security practices and systems. Defendants collected PII from Plaintiff and the Class Members. Defendants knew that a breach of its data systems would cause Plaintiff and the Class Members to incur damages.

77. Defendants breached their duties of care to safeguard and protect the PII which Plaintiff and the Class Members entrusted to it. Upon information and belief, Defendants adopted inadequate safeguards to protect the PII and failed to adopt industry-wide standards set forth above in its supposed protection of the PII. Defendants failed to design, maintain, and test its computer system to ensure that the PII was adequately secured and protected, failed to create and implement

reasonable data security practices and procedures, failed to implement processes that would detect a breach of its data security systems in a timely manner, failed to disclose the breach to potentially affected customers in a timely and comprehensive manner, and otherwise breached each of the above duties of care by implementing careless security procedures which led directly to the breach. Defendant's failure to implement reasonable and adequate safeguards to protect Plaintiff and Class Members' PII is evidenced in, *inter alia*, its unreasonably careless storage of password-protected files within the same folder as files containing the password to access those files.

78. Defendants breached the duties set forth in 15 U.S.C. §45, the FTC guidelines, the NIST's Framework for Improving Critical Infrastructure Cybersecurity, and other industry guidelines. In violation of 15 U.S.C. §45, Defendant failed to implement proper data security procedures to adequately and reasonably protect Plaintiff and Class Member's PII. In violation of the FTC guidelines, *inter alia*, Defendants did not protect the personal customer information that they keep; failed to properly dispose of personal information that was no longer needed; failed to encrypt information stored on computer networks; lacked the requisite understanding of their network's vulnerabilities; and failed to implement policies to correct security problems. In violation of the NIST's Framework, Defendant, *inter alia*, failed to adopt sufficient resources to identity and address security gaps.

79. Defendants' failure to comply with applicable laws and regulations constitutes negligence *per se*.

80. As a direct and proximate result of Defendant's failure to adequately protect and safeguard the PII, Plaintiff and the Class Members suffered damages. Plaintiff and the Class Members were damaged because their PII was accessed by third parties, resulting in increased risk of identity theft, property theft and extortion for which Plaintiff and the Class Members were forced to adopt

preventive and remedial efforts. These damages were magnified by the passage of time because Defendants failed to notify Plaintiff and Class Members of the Data Breach until weeks had passed. In addition, Plaintiff and Class Members were also damaged in that they must now spend copious amounts of time combing through their records in order to ensure that they do not become the victims of fraud and/or identity theft.

81. Plaintiffs and Class Members have suffered actual injury and are entitled to damages in an amount to be proven at trial but in excess of the minimum jurisdictional requirement of this Court.

## SECOND CAUSE OF ACTION

### Breach of Implied Contract

82. Plaintiff repeats and incorporates herein by reference each and every allegation contained in paragraphs 1 through 81, inclusive, of this Complaint as if set forth fully herein.

83. Defendants solicited Plaintiff's and Class Members' PII from its business partners as part of its ordinary course of business. Plaintiff and Class Members likewise reasonably believed and expected that the PII they entrusted to Defendants' business partners would be reasonably and adequately safeguarded by entities who received them such as Defendants. Indeed, Plaintiff and Class Members would not have provided their sensitive PII to Defendants' business partners—and consequently, Defendant itself—absent an implied promise that both would keep their PII secure.

84. Thus, when Plaintiff and Class Members provided their PII to Defendants as part of their transaction with its business partners, they entered into implied contracts with Defendants under which Defendants agreed to and was obligated to reasonably protect their PII.

85. Defendants did not protect Plaintiff and Class Member's PII and instead caused it to be disclosed to unauthorized third-party hackers. Defendants did not comply with federal statute and

regulation and did not comply with industry data security standards. In doing so, Defendants materially breached their obligations under implied contract. In doing so, Defendants materially breached its implied contracts with Plaintiff and Class Members.

86. Plaintiff and Class Members fully performed their obligations under the implied contract by providing their PII and making payments to Defendant.

87. As a result of Defendants' Data Breach, Plaintiff and Class Members have suffered actual injury and are entitled to damages in an amount to be proven at trial but in excess of the minimum jurisdictional requirement of this Court

## THIRD CAUSE OF ACTION

### Quasi-Contract/Unjust Enrichment

88. Plaintiff repeats and incorporates herein by reference each and every allegation contained in paragraphs 1 through 87, inclusive, of this Complaint as if set forth fully herein.

89. Plaintiff and Class Members provided their PII and conferred a monetary benefit upon Defendants in the form of their valuable PII, which Defendant then used for its own pecuniary benefit in providing credit check and other financial services.

90. Plaintiff and Class Members did so under the reasonable but mistaken belief that reasonable, adequate, and statutorily mandated safeguards would be implemented to protect their PII. They would not have provided their PII to Defendants or their business partners absent that reasonable but mistaken belief. Defendants were thereby unjustly enriched when it profited from Plaintiff and Class Members' reasonable but mistaken beliefs.

91. Defendants at all times had exclusive knowledge of the fact that they had not implemented reasonable and adequate data security safeguards to protect the sensitive PII that they were entrusted. This information was not available to their business partners or the public at large.

92. Defendants should not be permitted to retain their unjustly earned profits without having adequately implemented the data privacy and security procedures for itself that Plaintiff and Class Members bargained for and which were otherwise mandated by federal, state, and local laws. and industry standards. Defendants should not be allowed to benefit at the expense of consumers who trusted it to protect their PII.

93. As a direct and proximate result of Defendants' wrongful actions and inactions, Plaintiff and Class members have suffered injury and are entitled to damages in an amount to be proven at trial but in excess of the minimum jurisdictional requirement of this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all the Class Members, respectfully requests that the Court enter judgment in his favor and against Defendants as follows:

a. For an Order certifying the Class as defined herein and appointing Plaintiff and their Counsel to represent the Class;

b. For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PII, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

c. For equitable relief compelling Defendants to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety and to disclose with specificity to Class Members the type of PII compromised.

d. For an award of actual damages and compensatory damages, in an amount to be determined at trial;

e. For an award of punitive and treble damages, in an amount to be determined at trial;

f. For an award of costs of suit, litigation expenses and attorneys' fees, as allowable by law; and

g. For such other and further relief as this Court may deem just and proper.

h. Pre and post-judgment interest on any amounts awarded; and

i. Such other and further relief as this court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of herself and all others similarly situated, hereby demands a jury trial for all claims so triable.

Dated: December 31, 2025

Respectfully submitted,

**WILSHIRE LAW FIRM, PLC**

*/s/ Jesenia A. Martinez*

Jesenia A. Martinez
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017
Tel: (213) 381-9988
Fax: (213) 381-9989
*jesenia.martinez@wilshirelawfirm.com*
*JeseniaMartinezsTeam@wilshirelawfirm.com*

*Attorneys for Plaintiff and the Proposed Class*